IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 12, 2015

## DESMOND SHELTON SPANN v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2008-D-3274     Monte Watkins, Judge**

_____

**No. M2015-00103-CCA-R3-PC – Filed September 16, 2016**

_____

The Petitioner, Desmond Shelton Spann, filed a petition in the Davidson County Criminal Court seeking post-conviction relief from his convictions of possession of 300 grams or more of cocaine with the intent to deliver within 1,000 feet of a school and conspiracy to possess 300 grams or more of cocaine with the intent to deliver within 1,000 feet of a school. The Petitioner alleged that his counsel was ineffective at trial and on appeal. The post-conviction court denied the petition, and the Petitioner appeals. Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and ROBERT L. HOLLOWAY, JR., JJ., joined.

Manuel B. Russ (on appeal) and Jamie Machamer (at trial), Nashville, Tennessee, for the Appellant, Desmond Shelton Spann.

Herbert H. Slatery III, Attorney General and Reporter; Clarence E. Lutz, Senior Counsel; Glenn Funk, District Attorney General; and Roger Moore, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

### I.  Factual Background

The Petitioner was indicted with his co-defendants, Marvin Christopher Long and Dontillus Williams, for possession of 300 grams or more of cocaine with the intent to deliver within 1,000 feet of a school and for conspiracy to possess 300 grams or more of

cocaine with the intent to deliver within 1,000 feet of a school, both Class A felonies. State v. Marvin Christopher Long, No. M2010-01491-CCA-R3-CD, 2012 WL 3611741, at *1 (Tenn. Crim. App. at Nashville, Aug. 22, 2012). After being tried jointly by a jury in the Davidson County Criminal Court, all three were convicted as charged. Id.

On direct appeal, this court summarized the proof adduced at trial as follows:

On August 11, 2008, Agent [Corey] Currie observed a blue Kia SUV traveling westbound on I-40. He noticed that the driver appeared "stiff or rigid," the license plate was partially covered by a tag frame, and the vehicle had a broken taillight. Agent Currie followed the vehicle and observed a black plastic tag frame that partially obscured the license plate. He then stopped the vehicle. He approached the vehicle and asked the driver for his driver's license, and Defendant Long produced a driver's license falsely identifying him as Jerry Springfield. Agent Currie asked him to exit the vehicle and showed him the license plate. Defendant Long stated that he was traveling to Nashville from Jackson and that the vehicle belonged to his uncle. Agent Currie testified that he smelled an odor of marijuana when he approached the vehicle. He asked Defendant Long about it, and Defendant Long did not respond.

Defendant Williams was seated in the front passenger seat. When asked to provide identification, he also provided false identification to Agent Currie. Defendant Williams stated that they were going shopping in Nashville. The rear passenger, [the Petitioner], provided his identification to Agent Currie. Agent Currie radioed his partner, Agent Daugherty, who arrived to assist him. Agent Currie decided to search the vehicle. He first patted down the defendants. While Agent Currie was patting down Defendant Long, Agent Daugherty observed Defendant[] Williams and [the Petitioner] make a hand to hand exchange. Agent Currie found approximately $4,000 in cash in [the Petitioner's] shoes. He testified that he had previously confused Defendant[] Williams and [the Petitioner] at the suppression hearing. Inside the vehicle, Agent Currie found a "leftover marijuana cigarette" and a digital scale with white residue on it.

Agent Currie then contacted other agents and decided to release the vehicle but maintain surveillance of the vehicle. Agent [Justin] Fox established surveillance of the defendants' vehicle at mile marker 192 on I-40 eastbound. He followed the vehicle to Swett's Restaurant, where the defendants pulled around to the back of the building and parked away from the customer parking lot at 4:35 p.m. Defendants Williams and Long went inside the restaurant and "immediately came back out." Then all three defendants went inside the restaurant and came outside "a short time later." Defendants Williams and Long went back inside the restaurant, and [the Petitioner] stayed in the vehicle. At that time, a green Dodge Charger parked beside the defendants' vehicle. The driver of the Dodge Charger, a black male, got inside the defendants' vehicle with [the Petitioner]. Defendants Williams and Long then came out of the restaurant and got inside the vehicle with [the Petitioner] and the driver of the Dodge Charger. "[S]econds" later, the black male got back into the Dodge Charger and drove away. At 4:56 p.m., the defendants drove around to the front of the building and went inside the restaurant. They returned to the vehicle with "to-go" boxes and left with [the Petitioner] driving, Defendant Williams seated in the front passenger seat, and Defendant Long seated in the backseat.

After the defendants left the restaurant, the[y] drove across the street to a gas station. After leaving the gas station, the defendants drove westbound on I-40. Agent Fox directed patrol officer Taylor Schmitz to stop the vehicle for a traffic violation based on the broken taillight and obstructed license plate. After Officer Schmitz stopped the vehicle, Agent Fox spoke to [the Petitioner]. [The Petitioner] stated that the vehicle belonged to Defendant Long's uncle and that they had taken Defendant Long's aunt shopping and to dinner. Agent Fox then spoke to Defendant Long, who also stated that he had borrowed the vehicle from his uncle and that they had taken his aunt to eat at Swett[']s Restaurant. Agent Fox searched both Defendant Long and [the Petitioner] and found no contraband or large amounts of cash. Agent Fox then spoke to Defendant Williams, who stated that they had driven [the Petitioner's] aunt to Nashville. After initially refusing consent to search the vehicle, Defendant Long gave Agent

Fox consent to search the vehicle. Defendant Long signed the written consent form using the name "Jerry T. Springfield," which was the name on the driver's license he produced.

When Agent Fox approached the vehicle, he smelled "a strong odor of marijuana coming from the vehicle." From the back floorboard, he recovered digital scales with white residue that tested positive for cocaine. He also recovered a pack of rolling papers. All three defendants were then handcuffed and placed into custody. Agent Fox asked Defendant Williams, who was sitting on the ground, to stand up, and Defendant Williams would not move his legs apart. Agent Fox patted down Defendant Williams and found two bags containing 334 grams, or approximately 12 ounces, of cocaine.

David Kline, of the Metro Mapping and Planning Department, testified that the parking lot behind Swett[']s Restaurant is 135 feet from McKissack Park and 595 feet from Pearl Cohn Comprehensive High School. He also testified that on the date of the stop, the location on I-40 at which Officer Schmitz stopped the defendants' vehicle was 775 feet from Gower Elementary School and 214 feet from Brookmeade Elementary School. Steve Keel, Director of School Security for Metro-Nashville Public Schools, testified that all three of these schools were in session on August 11, 2008.

The defendants did not testify at trial or present any other evidence.

Id. at *3-5. The Petitioner was sentenced as a multiple offender to concurrent sentences of twenty-five years for each conviction. Id. at *1.

Subsequently, the Petitioner filed a pro se petition for post-conviction relief, alleging that counsel, who represented him at trial and on appeal, was ineffective. The post-conviction court appointed an attorney, who filed an amended petition for post-conviction relief.

Because the Petitioner's counsel was deceased, the Petitioner was the sole witness at the post-conviction hearing. The Petitioner testified that counsel did not object to Agent Fox's testimony "about where the drugs were acquired from" and did not

adequately cross-examine Agent Fox about the lack of proof regarding the Petitioner's involvement in purchasing or possessing the drugs. The Petitioner said that the drugs were found on a co-defendant, not on him. The Petitioner also complained that counsel did not object to Agent Fox's testimony about the purchase and the conspiracy, contending that the State had no proof the Petitioner had anything to do with acquiring the drugs. The Petitioner contended that counsel allowed Agent Fox "to say what he felt happened and let it be at that."

The Petitioner said that he was not able to talk with counsel about the jury instructions or the verdict forms prior to trial. The Petitioner said that counsel never objected to the jury instructions given by the trial court. After trial, counsel told the Petitioner "that the fact that they did not have the substance of cocaine on the verdict form, or the weight, that he was going to appeal, because they had to have the weight and the type of drug on the verdict form for the jury to deliberate." The Petitioner said that counsel raised the issue on appeal but failed to include the jury instructions or the verdict forms in the appellate record. As a result, on direct appeal this court stated that the issue regarding the jury instructions was waived. Regarding the verdict forms, the Petitioner "thought it was important for the fact that I was charged with possession of cocaine over three hundred grams; and, that alone allowed them to charge me with a [C]lass A felony," noting that the offense would have been a Class B felony if the amount had been less.

On cross-examination, the Petitioner acknowledged that he and his two co-defendants were tried together and that each had a different attorney. The Petitioner agreed that the weight of the cocaine was not disputed at trial and that none of the defendants attempted to prove the substance was not cocaine. The Petitioner conceded that the police smelled marijuana during the traffic stop and that he was never charged with a marijuana-related offense. The Petitioner acknowledged that the charges were related to possession of over 300 grams of cocaine and that the substance tested by the TBI was cocaine.

Copies of the jury instructions and the verdict forms were admitted as exhibits.

The post-conviction court found that the Petitioner's testimony was not credible. The post-conviction court further found that the Petitioner had failed to establish that he was prejudiced by counsel's allegedly deficient conduct. Therefore, the post-conviction court denied the petitions.[1]

On appeal, the Petitioner challenges this ruling.

---

[1] Although the trial court failed to make findings of fact and conclusions of law with regard to each of the grounds alleged in the petition, we conclude that the record is sufficient for this court to review. See State v. Swanson, 680 S.W.2d 487, 489 (Tenn. Crim. App. 1984).

## II. Analysis

To be successful in a claim for post-conviction relief, a petitioner must prove the factual allegations contained in the post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Moreover,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697). The same test is used to determine the effectiveness of counsel and appellate counsel. See Carpenter v. State, 126

S.W.3d 879, 886 (Tenn. 2004).

Our supreme court has set forth the following "non-exhaustive list" of factors which "is useful in determining whether an attorney on direct appeal performed reasonably competently in a case in which counsel has failed to raise an issue":

> 1) Were the omitted issues "significant and obvious"?
> 2) Was there arguably contrary authority on the omitted issues?
> 3) Were the omitted issues clearly stronger than those presented?
> 4) Were the omitted issues objected to at trial?
> 5) Were the trial court's rulings subject to deference on appeal?
> 6) Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?
> 7) What was appellate counsel's level of experience and expertise?
> 8) Did the petitioner and appellate counsel meet and go over possible issues?
> 9) Is there evidence that counsel reviewed all the facts?
> 10) Were the omitted issues dealt with in other assignments of error?
> 11) Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

Id. at 888.

On appeal, the sole issue raised by the Petitioner is that counsel was ineffective for "failing to object to inadequate jury instructions and failing to include those instructions in the Petitioner's direct appeal." The Petitioner contends that counsel was aware of the error in the jury instructions and the verdict forms "during trial" but failed to object. The Petitioner further contends that counsel failed to include the jury instructions and verdict forms in the record on direct appeal. The Petitioner argues that counsel should have requested instructions on lesser-included offenses and asked that the verdict forms be amended to specify the weight and type of drug to which the charges related. Regarding the Petitioner's claim that counsel was aware of the trial court's error but failed to object, we note that the post-conviction court discredited the Petitioner's testimony about trial counsel's awareness of the errors in the jury instructions and verdict forms. "It is well established that appellate courts do not reassess credibility determinations." Dellinger v. State, 279 S.W.3d 282, 292 (Tenn. 2009).

Regardless, on direct appeal the Petitioner argued

> that the trial court erred by: 1) failing to instruct the jury as to the lesser-included offenses of possession of cocaine with intent to sell or deliver outside of a school zone or facilitation of such offense; and 2) failing to indicate the schedule and weight of the controlled substance on the jury verdict form.

Long, No. M2010-01491-CCA-R3-CD, 2012 WL 3611741, at *7. This court examined the issue for plain error and found none. Id. at *7-8. Specifically, this court stated that the evidence adduced at trial was uncontroverted that the offense occurred within a school zone, that the jury instruction regarding the weight of the controlled substance "was proper and did not mislead the jury as to the applicable law," that the "only schedule of controlled substance for which [the Petitioner] was charged is cocaine," and that it was undisputed "that the amount of cocaine involved was more than 300 grams." Id. at *8-9.

The Petitioner acknowledged at the post-conviction hearing that the weight of the cocaine was not disputed at trial, that the defendants never tried to establish that the substance was anything other than cocaine, that he was never charged with a marijuana-related offense, and that the only offenses with which he was charged related to possession of over three hundred grams of cocaine. We agree with the post-conviction court that even if counsel were deficient, the Petitioner did not suffer any prejudice.

### III. Conclusion

Based upon the foregoing, we affirm the judgment of the post-conviction court.

_____
NORMA MCGEE OGLE, JUDGE